Dickson, J.
Opinion on demurrer of the plaintiff to the answer of defendant.
Plaintiff in eleven separate causes of action says that the defendant owes it the sum of $1,100 by reason of the violation by it of certain acts of the Ohio Legislature in regard to couplers on ears — railroad vehicles. The defendant for its defense says “that immediately prior to the times mentioned in the petition all of the cars described in the petition were properly equipped with couplers of the character required by the statutes of this state.’’ To this defense the state demurs on the ground “that the same does not set forth facts sufficient in law to constitute a defense to this action. ’ ’
A decision of the questions thus raised requires the court to pass upon the issues raised both by the plaintiff and the defendant, and involves a consideration of the following acts passed by *586 the state government and the federal government to promote the safety of employes and travelers upon railroads.
Act of Congress, approved March 2d, 1893, and amended April 1st, 1896, United States Statutes, Vol. 27, page 531, Sections 2 and 6:
Sec. 2 “That on and after the first day of January, 1898, it shall be unlawful for any such common carrier to haul, or to permit to be hauled or used on its line, any car used in moving interstate traffic, not equipped with couplers coupling automatically by impact, and which can be uncoupled without the necessity of men going between the ends of the cars.”
Section .6 provides a penalty of $100 for each and every such violation and the manner of its enforcement — the same system as the Ohio law.
Act of the Legislature of the state of Ohio, passed March 19th, 1906, 98 O. L., p. 76:
Sec. 2. ‘ ‘ That it shall be unlawful for any such common carrier to haul, or permit to be hauled or used on its line, any locomotive, car, tender, or similar vehicle used in moving state traffic, not equipped with couplers coupling automatically by impact, and which can be uncoupled without the necessity of men going between the ends of the cars.”
Section 6 of the same act provides a penalty of $100 for each and every violation to be recovered by suit against the offender— the same system as in the federal law.
Act of May 12th, 1902, Section 3565-23e, Revised Statutes:
“It shall be the duty of the inspector to inspect the couplers. * * * He shall also on discovering a defective coupler * * * immediately report the same to the superintendent of the road * * * and to the agent thereof. * # #”
Section 3565-23/:
“Any road whose superintendent or station agent shall receive such notice * * * shall cause the same to be immediately repaired. * * *”
Section 3565-23h:
“Any railroad which fails to comply with any of the provisions of this act shall forfeit and pay to the state of Ohio, the sum *587 of twenty-five ($25.00) dollars for each day such defective coupler * * * js kept jn use contrary to the provisions hereof. ’ ’
These acts — statutes—concern railroad companies. Railroad companies 'are corporations. All corporations owe their origin and existence to legislative enactments. The expression of a legislative body in the form of .an act, whether federal or state, is the will of the people — the will of the majority. The will of the people as expressed in such acts is supreme, limited only by the constitutions, federal and state — constitutions also created by the will of the people but in their sober moments, for the protection of the minority. Constitutional rights and duties thereunder are interpreted by the rules of law under the guidance of the courts — rules of law created by legislative enactments and by the common law of the land. All such rules are the technique of the science of the law — technicalities created for the sole purpose of ascertaining in a court the truth and doing justice.
Corporations thus are under the control of the people. To control is the power to start — to guide — and to stop. That power which thus creates can thus destroy.
This control of the people, by constitutions, by acts interpreted by the courts and enforced by the executive, knows no sentiment, is not controlled by public opinion, does not decide by the needs of the times, does not keep abreast of the times, but follows well known paths of safety- — -precedent.
The technique of the law ends in sober judgment — -justice—is rather philosophy teaching by example than by public demand.
Among the rights of man vested by both constitutions in the legislative departments of government is the right of self-defense —the right to protect health, morals, life and liberty. The protection of these rights is by the Constitution relegated to the police power of the government — the legislative departments— again the will of the people. In such rights as these the public will has its broadest scope. The duty of the public will here is to use reasonable care, taking into consideration the times, the places and the persons, with a purpose to accomplish the greatest good for all, with the least possible necessary injury to the individual,
*588 Congress and Legislature of Ohio under this police power have each passed laws to promote the safety of employes and travelers upon railroads — Congress as to cars engaged in interstate commerce, everywhere in the United States — the Legislature of Ohio as to cars engaged in intrastate commerce in Ohio. Thus all railroad vehicles in Ohio must have automatic couplers. The two laws are practically the same.
Each law avoids “state rights.” Where state and federal laws conflict the federal are supreme. Those laws as to automatic couplers concern a subject-matter, public health, within the control of each and do not conflict. The Ohio law is constitutional.
Reasonable laws as to automatic couplers would not conflict even if the Ohio law had been made to cover all railroad vehicles when in Ohio whether interstate or intrastate.
A train may be composed of cars of both classes. Such a train ■ — every vehicle in it — when in Ohio, should be controlled by the laws of Ohio as to safety of crews and passengers. It seems to the court, the fact that an interstate car when in Ohio would thus be subject to two penalties of $100 each, one state and the other federal, would not militate. Such law would not conflict with the federal law and would not be unconstitutional.
We live under a dual form of government — state and national —subject tp and protected by two controling powers, each in its sphere supreme — -together making one whole.
Corporate existence is one of contract. One may enter into double obligations — incur two liabilities for a breach of a single duty; as where a liability for damages for personal injuries by reason of negligence arises, one incurs a liability to both husband and wife — father and son, etc. It has long been well settled that one may be punished for the same offense both by the state and the municipality. Also it has long been settled that one may be punished for the same act, both by the federal government and the state government. Again, if these laws as to automatic couplers be. wise, they should be effective, and such a law would not seriously at any time interfere with interstate commerce and would not therefore be unreasonable.
Each railroad company has its rules — laws—its technique — its technicalities — its methods of procedure and remedies. The opera *589 tion of a railroad is a science. A disobedience of one of its rules may result in destruction of life and property. A disobedience of one of the rules of law may result in the destruction of government — civilization.
If a car by reason of a defect become dangerous, it is quickly removed. Interstate commerce is delayed. Is not danger to life and limb as important as danger to property? In the enforcement of these coupler and similar acts, the common law rule of reasonable care does not exist.
Defective equipment of trains in the manner pointed- out by the will of the people must be strictly enforced. The only excuses for non-compliance with such laws are the act of God and the public enemy.
The one hundred dollar acts, federal and state, do not require railroad vehicles to be equipped with couplers which may work, but they must be equipped “with couplers coupling automatically by impact and which can be uncoupled without the necessity of men going between the ends of the cars.” The coupler thus required is one which does work. A coupler which does not work is no coupler at all.. The duty of the railroad company is clear and its breach of such ,a duty renders it liable under the one hundred dollar act. The gist of this law — the one hundred dollar act — is the coupler must be one which works.
The act of May 12th, 1902, and of which there is no counterpart in the federal laws, contemplates that these couplers may get out of repair — may thus be liable under the one hundred dollar act, and may be then permitted by the company to remain out of repair and thus defeat the very purpose and the spirit of the law — promotion of the safety of employes and travelers on railroads.
The violations of the provisions of the act of May 12th, 1902, incur penalties of twenty-five dollars per day. This act requires notice to the railroad. Continued disobedience after twenty-four hours time in which to repair brings a penalty of $25 per day for each day such coupler is kept in use. The gist of -this act is the keeping in use of a defective coupler after notice and time given to repair. These two acts, or two sections of the same act, provide against two separate and distinct offenses — each in the pur *590 view of. the statutes a grievous offense. These laws and the punishment thereunder are not unreasonable and therefore are valid.
We hold that the one hundred dollar acts — laws of state and Congress — do not conflict, and the Ohio law is valid and supreme in Ohio. Both laws require couplers which work.
The fact that the law of Ohio goes further and regulates as to the repairs of these same couplers does not militate against this holding. The force and effect of the twenty-five dollar act does not change the one hundred dollar act -and make it mean that an automatic coupler once such always remains such. Every law and every part of a law must be given its full force and effect. This rule is supreme unless the intention be clearly otherwise. Expressio umus exclusio alterius does not apply. Neither is one of a class. Each is a separate offense.
The twenty-five dollar penalty can not become due until the one hundred dollar penalty has become due. The twenty-five dollar penalty in no way interferes with the one hundred dollar penalty, any more than the twenty-five dollar penalty for the second and each succeeding day interfere with the first twenty-five dollar penalty.
The twenty-five dollar penalty is neither a limitation of nor a definition of nor a restriction upon the one hundred dollar penalty, but is an addition to it — a new offense. It is an also.
The demurrer to the answer will be sustained.
The demurrer having been sustained, the motion to strike out the amendment to the answer will be overruled.